614 So.2d 1371 (1993)
Edith A. SELF, Plaintiff-Appellant,
v.
WALKER OLDSMOBILE COMPANY, INC., et al., Defendants-Appellees.
No. 92-365.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*1373 Gregory Lynn Jones, Alexandria, for Walker Oldsmobile Inc. et al.
Fred Andrew Pharis, Alexandria, for Edith A. Self.
Before DOMENGEAUX, C.J., and KNOLL and COOKS, JJ.
KNOLL, Judge.
Edith A. Self, surviving spouse of decedent, Huey P. Self, appeals the dismissal of her damage claim against Walker Oldsmobile Company, Inc. (Walker) on a motion for summary judgment. On March 8, 1988, Walker sold the Selfs an automobile financed by Hibernia National Bank and sold Mr. Self a credit life insurance policy in conjunction with the sale of the automobile. Mrs. Self based her damage claim against Walker on its failure to notify her and her husband, prior to his death on March 4, 1989, that Mid America Assurance Company, the insurer with whom Walker placed Mr. Self's credit life insurance, became insolvent prior to Mr. Self's death; accordingly, Mrs. Self contended that because of Walker's lack of notification, she was materially affected by the insolvent insurer's failure to pay the indebtedness at Hibernia.
The trial court granted Walker's motion for summary judgment, finding that Walker owed no duty to Mr. Self because of the absence of an agency relationship between the two, and even if Walker was Mr. Self's agent, Mrs. Self failed to plead this relationship.
Mrs. Self appeals, contending that the trial court erred: (1) in finding that there was no genuine issue of material fact on the question of the agency relationship between Mr. Self and Walker; (2) in determining that the pleadings do not allege a principal-agency relationship between Walker and Mr. Self; and, alternatively, (3) in not allowing Mrs. Self to amend her pleadings to allege a principal-agency relationship. We reverse and remand, finding genuine issues of material fact which precluded the granting of Walker's motion for summary judgment.

FACTS
On March 8, 1988, Walker sold the Selfs a 1988 Olds 98 Regency for $21,320.15. Hibernia financed $20,660.35 of the purchase price. Included in the amount financed was a premium of $808 for credit life insurance from Mid America; this premium was paid to Mid America and provided credit life insurance to Mr. Self for the term of his loan. Hibernia was named as the first beneficiary and Mr. Self's estate was second beneficiary of the policy of insurance. Walker was an agent for Mid America.
On March 4, 1989, Mr. Self died at the age of 59. Walker helped file a claim for payment of the credit life insurance with Mid America shortly after Mr. Self's death. In early April 1989, Walker received notification that the claim for credit life benefits on Mr. Self was returned because of Mid America's insolvency. As a result of the insolvency, all Mid America policies had been cancelled retroactively to August 4, 1988.
When Mrs. Self was unable to continue monthly payments on the automobile, Hibernia seized the vehicle and sold it at a sheriff's sale. Hibernia next sued Mrs. Self, seeking a deficiency judgment.
Mrs. Self then brought this action for damages against Walker and Hibernia.[1] Walker filed a motion for summary judgment.
In the case sub judice, the trial court granted Walker's motion for summary judgment, stating in its written reasons:

*1374 "Petitioner argues the existence of a cause of action based upon an agency relationship existing between Mr. Self and Walker Oldsmobile. Without such a relationship, Walker Oldsmobile does not owe a fiduciary duty to provide insurance to Mr. Self. Due to the agency relationship between Walker and Mid-America, Walker was able to offer credit life in conjunction with the contract of sale. This offer was accepted. Walker was acting as agent for Mid-America, not as a broker representing both. In order for Walker to have the status of a broker under LSA-CC Article 3016, it must be shown that he is the mandatary of both Walker and Mr. Self. Without such a showing, he is not a broker but only a mandatary of Mid-America Insurance Company.
Under LSA-CC Article 2988-2990, the principal must show that the mandatary has accepted the mandate if the mandatary denies the relationship. The affidavit which Mrs. Self executed does not provide sufficient evidence to establish a mandatary relationship between Mr. Self and Walker.
The record clearly establishes that Walker was the mandatary of Mid-America. Walker had a written agency relationship with Mid-America. Walker sold a policy of credit life insurance on behalf of Mid-America to Mr. Self. Upon completion of the sale, Walker made no other inquiries on behalf of Mr. Self. Walker did continue to represent Mid-America in the sale of credit life insurance policies. Therefore, this Court must conclude that Walker was not an agent of Mr. Self.
Even if we were to assume arguendo that Walker was an agent of Mr. Self, this was not set forth in the pleadings. To allow such an action at this point would be to allow an expansion of the pleadings. Defendant specifically objected to any expansion of the pleadings."

BACKGROUND DISCUSSION
From the outset we note that the trial court and the litigants only focused on the agency question. After carefully reviewing the pleadings and documents, we find three possible bases upon which Mrs. Self could have rested her damage action against Walker: (1) general negligence; (2) agency; and, (3) detrimental reliance. Accordingly, we conclude that the trial court and litigants improperly narrowed their scope of inquiry at this pre-trial stage of the proceedings. Therefore we will highlight our observations of these various bases before we apply the law of summary judgment to facts.
General Negligence. We recall that persons are liable for acts of commission or omission that cause damage to another if a duty imposed by the relationship of the parties is breached by such act or omission. Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983). Applying this general negligence approach in a claim by a surviving spouse against a bank for the non-payment of a credit life insurance policy, our brethren of the First Circuit stated in Hall v. First Nat. Bank St. Tammany Parish, 490 So.2d 357, 360 (La.App. 1st Cir.1986):
"In order for the plaintiff [widow] to succeed in the instant case, she must show that the Bank owed a duty to her, that the Bank breached its duty, and that she suffered a loss as a result of the Bank's action."
In Hall, the Bank, like Walker in the case sub judice, was the agent of the credit life insurer who issued a certificate of insurance under its group policy with the insurer. Moreover, as illustrated in Hall, a determination of whether a duty existed was essential to the establishment of the surviving widow's damage claim.
Furthermore, in the case sub judice, the pleadings do not reflect that Mrs. Self only asserts the rights of Mr. Self. On the contrary, Mrs. Self's action is not a demand against the insurer for the insurance proceeds. It is a claim for damages against Walker. The case of Key v. Cherokee Credit Life Insurance Company, 254 So.2d 696 (La.App. 3rd Cir.1971), is a good example of such an action. In Key, after the creditor-beneficiary of the credit life insurance policy failed to sue the credit life insurer for failure to pay the insurance *1375 proceeds, the surviving wife and children brought a damage action against the insurer, alleging that "their interest in the estate of William Key [the insured] is effected [sic] materially by whether his indebtedness at City Bank & Trust Company of New Iberia, Louisiana [the beneficiary of the credit life insurance] is paid by the life insurance policy...." In the present case, although Mrs. Self's damage claim is not against the insurer, the rationale of the cause of action in Key is equally applicable to the demand herein. As reflected in Mrs. Self's pleadings, "But for the failure of defendant Walker Oldsmobile Company, Inc., to notify petitioner and Huey P. Self of the lapse of insurance coverage, petitioner would not have suffered the damages set out...." Therefore Walker's duty to Mrs. Self is also integral to the resolution of Mrs. Self's negligence action, since her interest in the community property is adversely affected.
Agency. An agent is one who acts for or in the place of another by authority from the latter. Jackson v. Wal Mart Properties, Inc., 452 So.2d 409 (La. App. 3rd Cir.1984). Agency may be created verbally, in writing, or by implication. Mitchell Engineering Co. v. Ronald A. Goux, Inc., 413 So.2d 942 (La.App. 1st Cir. 1982), writ denied, 420 So.2d 173 (La.1982). Implied agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intention to do so. Anderson Window & Patio Co. v. Dumas, 560 So.2d 971 (La. App. 4th Cir.1990). The agency question is basically a factual determination. Automotive Finance Co. v. Kesk, Inc., 200 So.2d 136 (La.App. 4th Cir.1967).
Likewise, the statutory definitions of agent, broker, or solicitor are not determinative of the legal relationship of the parties. Boyter v. Blazer Const. Co., Inc., 505 So.2d 854 (La.App. 2nd Cir.1987). As stated in Tiner v. Aetna Life Insurance Company, 291 So.2d 774, 777 (La.1974):
"[T]he clear weight of authority is that statutes regulating licensing and defining agents, brokers, and solicitors are not intended to change or to exclude the general laws of agency: `these regulatory statutes do not prevent the courts from finding that an agency relationship exists in fact, outside the scope of the statutes.' [Mathews v. Marquette Casualty Co., 152 So.2d 577 (La.App. 2nd Cir.1963), writ denied, 244 La. 662, 153 So.2d 880 (La.1963)."
Here, too, facts which shed light on the agency relationship are essential to a legal determination of the existence of a duty on which liability may be premised.
Detrimental reliance. As an example of detrimental reliance and judicial recognition of equitable estoppel in an insurance setting, we refer to Travelers Ins. Co. v. United States Fidelity & G. Co., 168 So.2d 439 (La.App. 3rd Cir.1964). In Travelers, we stated at page 441:
"Estoppel, however, is a bar to the assertion of the truth. Plaintiff's primary argument is not that the policy has not been cancelled but that U.S.F. & G. should, because of its conduct, be precluded from asserting that the policy was cancelled.
* * * * * *
Equitable estoppel `arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.'
* * * * * *
Where one of two innocent parties must suffer a loss, the one by whose actions the loss was occasioned should bear it. Issuance of the certificate of insurance addressed to Catahoula Construction Company was made by U.S.F. & G. in pursuance of their business of writing workmen's compensation insurance. It would seem that U.S.F. & G. must have known that some reliance would be placed on the certificate for otherwise *1376 there would have been no purpose or reason for its issuance.
It is our view that having issued the certificate U.S.F. & G. incurred a duty to notify the addressee, Catahoula Construction Company, of the cancellation of the policy. No explanation has been offered for failure to give such notification." (Citations omitted.)
For other cases in which appellate courts have considered the question of damages due when a party has relied upon another to his detriment, see, Batiste v. Security Ins. Group, 416 So.2d 279 (La.App. 3rd Cir.1982), writ denied, 421 So.2d 909 (La. 1982); see also, Alley v. Courtney, 448 So.2d 858 (La.App. 2nd Cir.1984), writ denied, 450 So.2d 360 (La.1984); Cypress Oilfield Contr. v. McGoldrick Oil, 525 So.2d 1157 (La.App. 3rd Cir.1988), writ denied, 530 So.2d 570 (La.1988).
In this instance, just as with general negligence and agency, the existence of facts which elaborate on a duty can form the basis for liability.

AMENDMENT OF THE PLEADINGS
Our first problem in the analysis of the trial court's dismissal of Mrs. Self's damage claim on a motion for summary judgment revolves around the pleadings before us. After carefully reviewing the record in the case sub judice we find it clear that Mrs. Self pleaded a legal conclusion, i.e., Walker owed her and her husband a duty and it breached its duty to them. This problem surfaced in the trial court and caused the trial judge to remark in his written reasons for judgment that an amendment to Mrs. Self's petition was inappropriate because Walker objected to the enlargement of the pleadings. We will begin our analysis with a review on the jurisprudence as it relates to amendment of pleadings.
LSA-C.C.P. Art. 1154 provides:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
In a comment to LSA-C.C.P. Art. 1154 (West Publishing Company 1992), Professor William E. Crawford states: "The third sentence does not contemplate the adding of an issue, not pleaded, but rather allows the pleading of material facts for an issue pleaded only generally or as a legal conclusion, Comment (c)."
The trial court has discretion to deny an amendment to a pleading, and its ruling will not be disturbed except where the abuse of discretion is manifest and indicates the possibility of resulting injustice. James v. Missouri Pacific Railroad Company, 113 So.2d 41 (La.App. 2nd Cir. 1959). Furthermore, in Patterson v. City of DeRidder, 235 La. 140, 103 So.2d 68, 71 (1958), the Louisiana Supreme Court stated:
"[U]nder our modern trend of disregarding technicalities of pleading, in the interest of justice, and to prevent a multiplicity of suits, we have shown great leniency in permitting the amendment of pleadings to insure the party has his day in court where it is obvious the petitioner has a cause of action but has merely failed to allege sufficient well pleaded facts to bring the petition within the rules of proper pleading. This leniency is accorded, however, only when the amended and supplemental petition does not assert a different and distinct cause of action from the relief originally *1377 sought, change the substance of the demand, and the right of opposing parties to answer the petition as amended."
We find that the trial court abused its discretion in denying Mrs. Self the opportunity to amend her petition to plead material facts which would amplify the issue she raised only in a conclusive manner. An examination of Walker's memoranda filed in connection with the motion for summary judgment shows that it addressed at least the agency relationship that Walker had with Self. Accordingly, we do not find that Mrs. Self was attempting to introduce an issue based on a different cause of action or that Walker would have been prejudiced thereby. Therefore, on remand, Mrs. Self will be granted an opportunity to amend her petition, within a time frame set by the trial court, to allege with particularity facts which elaborate upon her assertion that Walker had a duty to her and her husband and that it breached that duty.
In making this determination, we recall the trial court's statement in its written reasons for judgment that Walker objected at the hearing on the motion for summary judgment to the expansion of the pleadings to include an allegation of Walker's agency relationship to the Selfs. We have carefully reviewed the transcription of the hearing and find no general objection by Walker to the extent referenced in the trial court's written reasons. Instead, we find that Walker objected in one instance to the expansion of pleadings to include Mrs. Self's reference in her opposing affidavit to the statement that a Walker employee allegedly made that Walker knew of Mid America's insolvency prior to Self's death. Accordingly, we find that the trial court erred in overstating Walker's objection.
However, even considering Walker's objection, we nevertheless find that amendment of the pleadings was not precluded. Article 1154 contemplates amendment of the pleadings when evidence is objected to, if the opposing party "fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits." In the case sub judice, Walker filed a counter-affidavit executed by the Walker employee who allegedly made the statement contradicting Mrs. Self's affidavit. Accordingly, we do not find that Mrs. Self is precluded from amending her petition to include even this allegation; as evidenced by Walker's counter-affidavit, Walker has not shown that inclusion of this allegation would prejudice it in maintaining its defense.

ANALYSIS OF SUMMARY JUDGMENT
Mrs. Self contends that there were genuine issues of material fact which precluded the dismissal of her damage suit against Walker on a motion for summary judgment.
The de novo standard of review is utilized by appellate courts when they consider trial court judgments on motions for summary judgment. Appellate courts use the same criteria trial courts apply to determine whether summary judgment is appropriate. Schroeder v. Board of Sup'rs, 591 So.2d 342 (La.1991). Accordingly, following LSA-C.C.P. Art. 966(B), the appellate court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." Based on LSA-C.C.P. Art. 966(B), a motion for summary judgment may be granted only when the mover has proven that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in his favor. Schroeder, supra. In determining whether the movant has satisfied his burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, documents supporting the movant's position are closely scrutinized, while the opposing documents are treated indulgently. *1378 Indus. Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152 (La.1983). The motion for summary judgment may not be granted on the basis of the trial court's belief that the party opposing the motion has little chance of succeeding at trial. Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4th Cir. 1990).
Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Seals v. Morris, 410 So.2d 715 (La.1981); Pickett v. Jacob Schoen & Son, Inc., 488 So.2d 1257 (La.App. 4th Cir.1986). Summary judgment is proper only where no duty exists as a legal question of law, where no factual dispute exists and no credibility question is required. Coates v. Nettles, 563 So.2d 1257 (La.App. 1st Cir.1990).
As shown by the various legal approaches which may be used to evaluate Mrs. Self's action against Walker, the question of duty arises in each. We find that the trial court erred as a matter of law in focusing only on the question of agency. We further find that it was manifestly erroneous in its finding that there were no genuine issues of material fact on the critical question of Walker's duty to the Selfs.
The Selfs had a longstanding business relationship with Walker. The affidavit submitted by Mrs. Self shows that she and her husband purchased five vehicles from Walker and that credit life insurance was obtained in each instance. The record further does not show any instance where notices either from Mid America or the insurance commissioner were sent to the Selfs. In fact, on the insurance application with Mid America, Self's address does not appear. To the contrary, the record shows that after payment in full of the $808 premium (even though the record shows cancellation of the policy well before the expiration of the term, there is no evidence at this stage of the proceedings that all or any part of this payment was refunded) all correspondence regarding Self's credit life insurance was sent to Walker.
Furthermore, in reviewing documentary evidence submitted during the hearing on the motion for summary judgment, we find references in the combination promissory note, truth in lending disclosure statement and chattel mortgage (hereafter contract) as well as the insurance application which further give credence to Mrs. Self's assertion that summary judgment was inappropriate.
In the contract, the following language appears:
Credit Insurance: Credit Life and Credit Disability Insurance are not required in order to obtain this loan. I (We) have the option of voluntarily electing to purchase credit insurance through you. (Emphasis added.)
Then, the following paragraph is contained in the insurance application:
"I hereby make application to the above named company [Mid America Assurance Company of Louisiana] for the insurance policy(s) for a period equivalent to the term of my loan as described in the above schedule of coverage. The option has been extended to me to purchase this insurance from any company or agent of my choice or to assign policies which I currently possess, and I freely choose the company and agent to whom this application is made." (Emphasis added.)
We find that from these facts and documents, it may be inferred that Self relied to his detriment upon Walker to act on his behalf in matters involving his credit life insurance and that this reliance continued after Walker sold him the policy of insurance. Furthermore, based on the conflicting statements on Mrs. Self and the Walker employee, there exists a dispute regarding Walker's knowledge of insolvency prior to Mr. Self's death which materially affects the general negligence aspect of Mrs. Self's damage action against Walker. Accordingly, after examining the record, we find that there existed genuine issues of material fact on the critical question of whether Walker owed a duty to the Selfs. Therefore we find that the trial court should have denied Walker's motion for summary judgment.
*1379 For the foregoing reasons, we reverse the summary judgment, which dismissed Mrs. Self's petition against Walker and remand this case to the trial court for further proceedings consistent with this opinion. Furthermore, the trial court is directed to set a time period within which Mrs. Self may amend her pleadings to allege facts which elaborate upon her assertion that Walker had a duty to her and her husband, and that it breached that duty. Costs of this appeal are assessed to Walker.
REVERSED AND REMANDED.
NOTES
[1] Hibernia settled the lawsuit with Mrs. Self and was dismissed from this litigation. The record does not elaborate on the terms of this settlement. Nevertheless, Hibernia was not involved in the trial court's ruling on the motion for summary judgment and is not a party to this appeal.